**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY – NEWARK VICINAGE**

**KAITRON BRYANT,**
Plaintiff,
v.
**VIMEO, INC.;**
**BACKSTAGE, LLC d/b/a FILMFREEWAY;**
**IMDb.COM, INC.;**
**AMAZON.COM, INC.;**
**YOUTUBE, LLC;**
**GOOGLE LLC; and**
**META PLATFORMS, INC. d/b/a INSTAGRAM,**
Defendants.

Case No.: ________________
(To be assigned by the Clerk)

**COMPLAINT FOR CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**
**(JURY TRIAL DEMANDED)**

Plaintiff Kaitron Bryant, appearing pro se, alleges as follows against Defendants Vimeo, Inc.; Backstage, LLC d/b/a FilmFreeway; IMDb.com, Inc.; Amazon.com, Inc.; YouTube, LLC; Google LLC; and Meta Platforms, Inc. d/b/a Instagram (collectively, "Defendants" or the "Platform Defendants"):

## I. NATURE OF THE ACTION

1. This is an action for contributory and vicarious copyright infringement, declaratory relief, and injunctive relief arising from the Platform Defendants' sustained, knowing facilitation of the infringement of Plaintiff's federally registered motion picture **For Lila** by a third party, Malik Myers, over a period spanning August 2025 through the filing of this Complaint.

2. This is not a case about a platform's good-faith processing of competing copyright claims. Each Platform Defendant received certified federal copyright registrations, the controlling written contract, certified court records from an active federal lawsuit, and the third party's own sworn judicial admission that he does not own the copyright at issue. Each Platform Defendant nevertheless continued — repeatedly, and over Plaintiff's documented objections — to host, reinstate, restore, and give effect to the infringing content and the infringer's fraudulent counter-notifications, while simultaneously locking the verified rights holder out of his own accounts and title pages.

3. Across 2025 and 2026, Plaintiff was forced to submit more than two dozen distinct DMCA takedown notices and formal legal notices to the Platform Defendants concerning the same small set of infringing URLs, because the Platform Defendants repeatedly restored or permitted the re-upload of the identical content in response to at least fourteen (14) documented false counter-notifications sworn by the infringer under penalty of perjury pursuant to 17 U.S.C. § 512(g)(3). By continuing this conduct after acquiring actual knowledge of the fraud, the Platform Defendants forfeited the safe harbor protections of 17 U.S.C. § 512 and became liable as contributory and vicarious infringers.

## II. JURISDICTION AND VENUE

4. This action arises under the Copyright Act of 1976, 17 U.S.C. § 101 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (acts of Congress relating to copyrights).

6. This Court has personal jurisdiction over each Defendant because each Defendant purposefully directs its interactive platform services at residents of New Jersey, transacts substantial and continuous business within this District, hosts and displays the infringing content to users within this District, and directed the communications and platform determinations at issue in this Complaint to Plaintiff at his residence in this District.

7. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the events or omissions giving rise to the claims occurred in this District, Plaintiff resides in this District and suffered the injury here, and each Defendant may be found in this District by virtue of its continuous and systematic provision of digital services to users within this District.

## III. PARTIES

8. Plaintiff Kaitron Bryant is an individual residing at 295 Johnston Ave, Apt 507, Jersey City, New Jersey 07304. Plaintiff is an independent film producer, the Managing Member of Croatan Productions LLC, and the registered author, creator, and sole copyright owner of the motion picture **For Lila**.

9. Defendant Vimeo, Inc. is a Delaware corporation with its principal place of business at 330 West 34th Street, 5th Floor, New York, New York 10001. It operates the global video-sharing platform located at vimeo.com.

10. Defendant Backstage, LLC is a Delaware limited liability company with its corporate headquarters at 770 Broadway, 7th Floor, New York, New York 10003. Backstage, LLC owns and operates FilmFreeway, a digital film festival submission

platform located at filmfreeway.com. Backstage, LLC is sued in its own capacity and doing business as FilmFreeway.

11. Defendant IMDb.com, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington, and is a wholly owned subsidiary of Defendant Amazon.com, Inc. Together they operate the Internet Movie Database (IMDb) at imdb.com.

12. Defendant Amazon.com, Inc. is a Delaware corporation headquartered at 410 Terry Avenue North, Seattle, Washington 98109, and is the parent company of, and the designated DMCA agent recipient for, Defendant IMDb.com, Inc.

13. Defendant YouTube, LLC is a Delaware limited liability company with its principal place of business in San Bruno, California, and is a wholly owned subsidiary of Defendant Google LLC. Together they host and operate the YouTube media platform at youtube.com.

14. Defendant Google LLC is a Delaware limited liability company headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043, and is the parent company of Defendant YouTube, LLC. Google LLC directly received and processed removal requests and litigation-hold notices at issue in this Complaint.

15. Defendant Meta Platforms, Inc. is a Delaware corporation with its principal place of business at 1 Hacker Way, Menlo Park, California 94025. Meta Platforms, Inc. owns and operates the Instagram digital mobile and web social networking application, and is sued in its own capacity and doing business as Instagram.

## IV. FACTUAL BACKGROUND

### A. Plaintiff's Ownership, Registrations, and the Underlying Federal Litigation

16. Plaintiff is the exclusive creator, author, and sole legal copyright owner of the motion picture **For Lila**, protected under valid federal registrations including U.S. Copyright Registration No. **TXu 2-316-481** (the screenplay, registered to Croatan Productions effective March 21, 2022) and U.S. Copyright Registration No. **PAu 4-283-541** (the final audiovisual motion picture, for which the U.S. Copyright Office granted special handling).

17. The controlling Crew Deal Memo executed for the production of **For Lila** states in explicit terms: "Croatan Productions will retain 100% of said film script and 90% of said film footage. Croatan retains the rights to sale, distribute, market, advertise and promote said film script and footage without interference from said contractor." The contractor's 10% interest is a financial participation interest in footage proceeds only; no signed writing transferring any copyright ownership interest, as required by 17 U.S.C. § 204(a), has ever existed.

18. On September 25, 2025, in sworn testimony before the Superior Court of New Jersey in a temporary restraining order proceeding, the third-party infringer, Malik Myers, admitted under oath that he never copyrighted the film and that Plaintiff owns the rights to the work.

19. Three days and six days after that sworn admission, Myers filed U.S. Copyright Office applications resulting in Registration Nos. PA 2-562-581 and PA 2-563-835, each of which identifies Plaintiff as the author of the underlying work on its face. Plaintiff has a pending cancellation request before the U.S. Copyright Office directed at those registrations.

20. A proceeding Plaintiff initiated before the Copyright Claims Board, CCB Docket No. 25-CCB-0397, was dismissed **without prejudice** pursuant to 17 U.S.C. § 1506(f)(1)(B) after Myers was made the subject of a Second Noncompliance Order dated September 25, 2025 for his own procedural failures. The CCB never adjudicated ownership, never reached the merits, never held a hearing, and conferred no rights on any party. Plaintiff elected to pursue his statutory remedies through a comprehensive federal civil action.

21. That federal action, **Bryant v. Myers et al.**, Case No. 2:25-cv-16688-EP-AME (D.N.J.), remains active and is currently on appeal to the United States Court of Appeals for the Third Circuit as Appeal No. 26-1459. The Clerk entered default against Myers on November 20, 2025 (D.E. 22). The district court thereafter declined to enter default judgment, and its February 27, 2026 order dismissed the action notwithstanding that default — rulings now under review in the Third Circuit. At no point has Myers obtained any ruling establishing ownership of any interest in the work. In a filing docketed February 5, 2026 (D.E. 56), Myers admitted in a sworn submission that the CCB matter “was never adjudicated, never proceeded to a hearing, and conferred no rights.”

22. At all relevant times, each Platform Defendant was provided with certified copies of both federal registrations, the Crew Deal Memo, the CCB noncompliance and dismissal orders, the federal district court docket, and the sworn judicial admissions described above.

**B. Backstage, LLC / FilmFreeway**

23. On August 22, 2025, Plaintiff provided explicit written notice to FilmFreeway via email, informing the platform that Myers was distributing and submitting **For Lila** to film festivals through the platform without authorization or legal right.

24. Every submission made through FilmFreeway requires the submitter to represent and warrant that he holds the rights to the submitted work. Each of Myers’s submissions of **For Lila** therefore constituted a false rights warranty made on FilmFreeway’s own platform, of which FilmFreeway had structural notice from its own

terms of service once Plaintiff's August 22, 2025 notice identified the submitter as unauthorized.

25. On February 2, 2026, Plaintiff issued a second, comprehensive formal legal notice to FilmFreeway's Trust & Safety team, identifying the specific infringing user account (filmfreeway.com/Salazar435), detailing the active federal copyright lawsuit, and providing both copyright registration numbers.

26. On February 3, 2026, FilmFreeway replied in writing, explicitly assuring Plaintiff that it had conducted a database review, found no further instances of the film, and had "restricted the user's ability to make any projects public on FilmFreeway." In the same email, FilmFreeway characterized Myers's conduct as a "breach" in its own words and made a second explicit written promise: that it would inform Myers of the breach and ensure that any materials not owned by him were removed.

27. Despite those explicit written assurances and clear actual knowledge of the infringement, FilmFreeway failed to effectively implement the restriction or police its platform. On April 30, 2026, Plaintiff issued a further infringement notice to FilmFreeway after discovering renewed festival exploitation of the film, and formally requested the complete submission records associated with Myers's account, including the rights representations made on the submission forms, for use in the pending federal litigation.

28. In May 2026 — approximately three months after FilmFreeway claimed the account was restricted, and after both of its written promises — unauthorized submissions transmitted through FilmFreeway's platform resulted in public recognition and accolades: the Best Film Awards' published "Winners, May 2026" page lists the film under "Best Actor in an Action Film," crediting "Dir.: Malik Myers" — the very user FilmFreeway had assured Plaintiff in writing was restricted from making any project public, credited as director of the very film FilmFreeway had promised to remove.

29. By contrast, when Plaintiff provided substantially the same documentation to an individual festival, the Best Actor & Director Awards, that festival removed the film on April 30, 2026 upon notice. Compliance was straightforward for any party acting in good faith; FilmFreeway's continued transmission of Myers's submissions after its own written restriction assurance was not.

**C. IMDb.com, Inc. / Amazon.com, Inc.**

30. IMDb and Amazon were systematically provided with actual and constructive knowledge of the unauthorized, infringing display, unverified metadata, and fraudulent credits associated with **For Lila** on the IMDb platform.

31. On August 29, 2025, Plaintiff sent his first written copyright infringement notice to copyright@imdb.com, identifying Myers's IMDb profile (imdb.com/name/nm15926624/) as containing Plaintiff's intellectual property without authorization, attaching his federal copyright registration certificate as proof of ownership, and requesting removal.

32. In late September 2025, Myers submitted a sworn DMCA counter-notice to IMDb asserting that he was the sole Director and Editor of the film and held ownership rights in it — days after his own September 25, 2025 sworn courtroom admission of non-ownership. On September 27, 2025, Plaintiff responded to IMDb Copyright Support under 17 U.S.C. § 512(g)(2)(C), identifying the then-active Copyright Claims Board proceeding (CCB Docket No. 25-CCB-0397) as the pending legal action barring restoration, documenting the falsity of Myers's sole-director claim, and requesting that Myers's account be flagged for repeated DMCA abuse and that Plaintiff's title page be locked against Myers's edits. IMDb honored none of these requests.

33. On October 6, 2025, Plaintiff issued a formal notice to IMDb/Amazon detailing that the platform was misrepresenting **For Lila** by displaying unauthorized credits for Myers, who breached his contract and lacked authority to alter or distribute the film. Plaintiff provided direct screen captures of the official end credits showing the true authorship. In direct response the same day, IMDb/Amazon explicitly refused to correct the false entries, invoking internal corporate policies regarding "earliest versions" based on a festival screener cut that was never an authorized public release.

34. On October 7, 2025, Plaintiff filed a formal DMCA Takedown Notice with Amazon's registered copyright agent and explicitly requested that IMDb unlock the title page so the rightful owner could maintain accurate information. On October 8, 2025, IMDb/Amazon issued a final, sweeping refusal stating that its customer service department "will not be able to offer any additional insight or action on these matters," shutting down administrative avenues and locking Plaintiff out of his own property.

35. On October 19, 2025, Plaintiff issued a further credit-correction and litigation-hold demand to IMDb legal and support teams expressly referencing federal Case No. 2:25-cv-16688-EP, requesting that the title's credits be frozen against Myers's edits, that the correct credits be restored, and that Plaintiff's own account be unfrozen, attaching the federal docket sheet, the complaint, the registration certificate, and the breach-of-contract notice.

36. On December 18, 2025, and again on December 20, 2025, Plaintiff provided supplemental written legal notices to IMDb/Amazon showing that Myers was continuing to alter, post, and distribute a derivative, unauthorized trailer of **For Lila** and casting-related metadata on his public IMDb profile

(imdb.com/name/nm15926624/), and explicitly alerted the platform that this conduct violated prior court submissions in the active federal lawsuit.

37. On December 19, 2025, Myers submitted a further sworn DMCA counter-notification to IMDb concerning the removed trailer (imdb.com/video/vi4172794649/), declaring under penalty of perjury that Plaintiff "holds only a registration for the underlying script, not the audiovisual work," and that the CCB had dismissed Plaintiff's claim by order dated September 30, 2025 "holding that co-owners cannot infringe one another." Both statements were materially false when made: Plaintiff's motion-picture registration, PAu 4-283-541, was already in effect and had been provided to IMDb, and the CCB order was a without-prejudice noncompliance dismissal containing no co-ownership holding of any kind.

38. On December 22, 2025, IMDb Copyright Support notified Plaintiff in writing: "We received a DMCA counter-notice (see below) and will restore the identified information." That same day — within the statutory window — Plaintiff submitted three detailed responses to IMDb identifying the material contradictions in the counter-notice, the falsity of its co-ownership theory, Myers's default status in the federal action, and the multiple materially different signatures on the purported contract Myers had produced, and expressly directed IMDb, as the verified owner, not to restore the copyrighted work. IMDb restored and continued to host the material notwithstanding.

39. On January 5, 2026, Plaintiff issued an Urgent Final Notice to IMDb/Amazon, providing prima facie evidence of the federal registrations, corporate operating agreements, and explicit notice that active litigation governed the property, and warned the platform that continued hosting of the disputed content placed it outside the protections of the DMCA safe harbor, 17 U.S.C. § 512.

40. On February 10, 2026, Plaintiff served a Notice of Federal Docket Inclusion on the IMDb and Amazon legal departments (legal@imdb.com and legal@amazon.com), notifying them of their addition as defendants in the federal action, of Myers\u2019s status as a documented repeat infringer, and that all moderation decisions, credit edits, and internal records relating to Myers and the film were subject to discovery.

41. On May 15, 2026, Plaintiff issued a five-day response demand to IMDb and Amazon legal concerning the **For Lila** listing (IMDb Title No. tt32333098). On May 20, 2026, Plaintiff issued a DMCA Takedown Notice and Final Notice Before Litigation to copyright@imdb.com and Amazon's safe harbor agent. On May 21, 2026, Plaintiff issued a further DMCA Takedown Notice under 17 U.S.C. § 512(c)(3). IMDb/Amazon complied with none of them.

42. As of the filing of this Complaint, Myers's IMDb profile displays a Best Film Awards acting credit for the film labeled "2025 Winner," while the Best Film Awards' own website lists the same category award for the film among its "Winners,

May 2026.” Whether that discrepancy reflects two separate unauthorized submissions or mislabeled metadata, either reading evidences continuing exploitation of the work through credits IMDb refuses to permit the verified owner to correct.

**D. Vimeo, Inc.**

43. Vimeo was provided with actual and constructive knowledge of systematic and repeated copyright infringement of **For Lila** on its network, which it failed to permanently stop.

44. On September 13, 2025, Vimeo confirmed via email that it had removed infringing video uploads of Plaintiff’s film pursuant to a valid DMCA notice. On September 14, 2025, Plaintiff explicitly requested that the content be permanently blocked from being re-added to the platform.

45. On September 29, 2025, Vimeo restored the infringing content (vimeo.com/1092124006) based on a counter-notice submitted by Myers. Plaintiff immediately issued an urgent warning to Vimeo’s Trust & Safety team, providing prima facie evidence of ownership, details of the then-active proceeding before the Copyright Claims Board (CCB Docket No. 25-CCB-0397), and notice that the platform was forfeiting its safe harbor protection. Vimeo nevertheless failed to maintain the removal.

46. On January 15, 2026, Plaintiff filed a further formal DMCA Takedown Notice (Claim ID: 101499) for an identical infringing video (vimeo.com/1139781480), alerting Vimeo that Myers was engaged in a chronic, repeating pattern of infringement.

47. On January 30, 2026, Vimeo issued an automated notification that it was once again restoring the infringing video. Plaintiff immediately engaged Vimeo’s legal and moderation teams across multiple high-priority emails, attaching the federal complaint, the corporate operating agreement, and the active federal docket. On February 2, 2026, Vimeo Trust & Safety representative “Daria L.” acknowledged the active federal litigation and stated the video was no longer active.

48. On February 10 and February 11, 2026, Plaintiff issued formal legal notices to Vimeo documenting that the platform had yet again permitted Myers to republish the copyrighted trailer and to display protected behind-the-scenes production photographs on his public profile. On February 11, 2026, Plaintiff also served a § 512(g)(2)(C) demand on Vimeo concerning vimeo.com/1139781480 and served a Notice of Federal Docket Inclusion on Vimeo’s legal team.

49. On February 24, 2026, Plaintiff was forced to file yet another DMCA notice (Vimeo Ticket No. 28414277) after a further re-upload incident.

50. On May 1–2, 2026, Plaintiff served a takedown demand on Vimeo expressly invoking 17 U.S.C. § 512(g)(2)(C) — which requires a service provider **not** to restore removed material once the copyright owner provides notice that an action has been filed seeking a court order against the subscriber — attaching the federal registrations and court orders. Vimeo acknowledged the matter under Case No. 28527566.

51. On May 8, 2026, Plaintiff submitted two further back-to-back DMCA notices to Vimeo. On May 13, 2026, Plaintiff filed yet another DMCA notice (Vimeo Ticket No. 28544516), noting in the submission itself that it was the **fifth** filing directed at the same content.

52. On or about May 10, 2026 — after every assurance described above — new infringing content associated with the film, including a "Cast Auditions" video, was uploaded to and displayed on Vimeo's platform, demonstrating that Vimeo's claimed restrictions were never effectively implemented.

**E. Meta Platforms, Inc. / Instagram**

53. On October 9, 2025, Instagram/Meta issued a formal notice under Copyright Report No. 1511408786702002 confirming the initial removal of unauthorized content from its platform, establishing its awareness of the property dispute.

54. On January 22, 2026, Instagram/Meta notified Plaintiff under Copyright Report No. 878797251752356 that Myers had submitted a formal DMCA counter-notification to reinstate an unauthorized Reel (instagram.com/myersmalik689/reel/DRb86a8khvB/).

55. On January 22, 2026, within the statutory timeframe, Plaintiff formally replied to Instagram/Meta, placing the platform on notice that the counter-notice was a fraudulent filing containing material perjury, and provided Meta with the active federal copyright registrations, the executed contract explicitly reserving all marketing and distribution rights to Croatan Productions LLC, and the active federal District Court summons and complaint.

56. On January 25, 2026, Plaintiff submitted a further Instagram/Facebook Copyright Report (Form No. 2063803941128770) concerning continuing infringing content.

57. After identifying Myers's chronic infringing activities, Instagram/Meta issued a platform ban and suspended his primary account (@myersmalik689). Plaintiff thereafter repeatedly alerted Instagram/Meta that Myers was using unauthorized, fraudulent duplicate and "ghost" accounts to circumvent the ban and continue distributing trailers and promotional media of **For Lila** — including, on

information and belief, a successor account operating under the handle @malik416411.

58. On April 20, 2026, Plaintiff submitted a formal repeat-infringer and ban-evasion report to Instagram/Meta. On or about April 30, 2026, Myers publicly posted screenshots from the film to an Instagram account in connection with a claimed “Best Director” festival award; the post was reported and removed — a concrete, documented instance of the ban evasion of which Plaintiff had warned. Instagram/Meta nevertheless failed to implement effective ban-circumvention controls, knowingly permitting a banned repeat infringer to continue exploiting its platform.

**F. YouTube, LLC / Google LLC**

59. On August 22, 2025, Plaintiff submitted a DMCA takedown notice to YouTube (Submission Ref. KH4NRJXGXYUHJKNG6M62EX3HXM) concerning an unauthorized upload of the protected **For Lila** trailer (youtube.com/watch?v=O7llfXmIDYQ). The content was removed on or about August 23, 2025.

60. The identical content later returned to the platform. On January 13, 2026, YouTube/Google confirmed via email (Submission ID: C4BFVV5J74FMAAQ5E2NCCZWBQU) that it removed the unauthorized upload following a further takedown notice from Plaintiff.

61. The same day, January 13, 2026, YouTube/Google notified Plaintiff that Myers had submitted a formal DMCA counter-notification (Tracking ID: ZQV2GZEG62I6TIVNOSVWNSYF7M), under the display name “Daddy Long Legs,” to reinstate the video under penalty of perjury. Within the statutory window, Plaintiff responded directly to YouTube/Google, providing explicit documentation of the active federal litigation and valid copyright registration records — the precise showing that, under 17 U.S.C. § 512(g)(2)(C), obligated the platform **not** to restore the material. Plaintiff also identified an additional unauthorized, derivative upload (youtu.be/UevUXJvR0YI) requiring disablement.

62. On January 15, 2026, Myers submitted a second false counter-notification (Tracking ID: N7VAXVISQ26YKPAS5M7KAHQOYI), which YouTube/Google likewise processed. Myers’s counter-notifications affirmatively represented, under penalty of perjury, that the Copyright Claims Board had dismissed Plaintiff’s claim and in doing so had found Myers to be a co-owner of the copyrighted footage. No such finding exists anywhere in the CCB record; the only CCB order concerning Myers is the September 25, 2025 Second Noncompliance Order entered against him.

63. On January 28, 2026, notwithstanding Plaintiff’s timely January 13 responses attaching the file-stamped federal complaint, the federal docket sheet, and both copyright registration certificates — the precise evidence 17 U.S.C. § 512(g)(2)(C) makes a bar to restoration — YouTube reinstated the infringing video, notifying

Plaintiff in writing that the video had been restored "in accordance with US law." It had not been: the statute forbids restoration once the copyright owner provides notice of a filed action seeking a court order against the subscriber, which Plaintiff had provided fifteen days earlier.

64. On the same date, Plaintiff's own authorized trailer of **For Lila**, posted to his official channel (youtu.be/hdfTNqU95F4), remained removed from the platform, and YouTube's automated systems rejected Plaintiff's attempts to restore it as "not eligible." The platform thus maintained the admitted non-owner's unauthorized derivative copy live while keeping the verified owner's original offline — a complete inversion of the rights the Copyright Act protects.

65. On February 1, 2026, Plaintiff served written Notice of Filing of a Second Amended Complaint on Vimeo Trust & Safety, YouTube Copyright, and IMDb Copyright Support, identifying the specific infringing URLs on each platform, stating that the recipients were named as co-defendants for continued use of the material following multiple removal requests, and reiterating that Myers does not own the footage and had provided each platform with false DMCA claims.

66. On January 29, 2026, YouTube/Google issued a communication attempting to minimize Plaintiff's documentation, requesting further proof because the prior CCB matter had been dismissed. Plaintiff immediately replied on January 29 and January 30, 2026, clarifying that the CCB matter was dismissed without prejudice solely because Plaintiff elected to pursue his statutory remedies through a comprehensive federal civil action, and that the dismissal adjudicated nothing.

67. On January 28, 2026, and February 10, 2026, Plaintiff issued urgent final warnings and formal Litigation Holds directly to Google Legal and YouTube Legal, detailing that the platform's administrative loops were being weaponized by a chronic repeat infringer to bypass copyright compliance, and that continued hosting of reinstated content compromised the platform's safe harbor posture. On February 10, 2026, Plaintiff served a Notice of Federal Docket Inclusion on the YouTube and Google legal teams.

68. On May 2, 2026, Plaintiff served a further takedown demand on YouTube expressly invoking 17 U.S.C. § 512(g)(2)(C), attaching the copyright registrations, the contract with the rights reservation highlighted, and a Third Circuit order from the pending appeal. YouTube acknowledged receipt but then **declined the takedown on the stated ground that the ten-business-day counter-notice window had expired** — an inversion of the statute, which makes timely notice of a filed court action the very condition that forbids restoration of the material. Plaintiff submitted a formal appeal of that determination to multiple Google and YouTube legal addresses.

69. YouTube/Google thereafter processed and honored at least four additional false counter-notifications sworn by Myers under penalty of perjury: on May 3, 2026 (Ref. W3ERQ3V4FZEYTPEW6NSAWJODS4); on May 7, 2026 (Ref.

TQG5O6PBAIRPX4KKAR55GYKIXQ); on May 8, 2026 (Ref. X4LNG5K327OLKCZBNUQDI27OBY); and on May 18, 2026 (Ref. FBAPPSXC7QCVT5SKVHY2QOVSFY). The May 18, 2026 counter-notification affirmatively represented that the CCB had issued a ruling deciding co-ownership of the work — a materially false statement, as the CCB matter was dismissed without prejudice and never reached the merits, as Myers himself had already admitted in a sworn federal court filing (D.E. 56).

70. On May 7, 2026, Plaintiff also submitted a formal removal request through Google's legal removals process (Case No. 0-9891000040646). On May 19, 2026, Plaintiff served notice on Myers's co-defendant's counsel in the federal action cataloging the material misstatements in the May 18 counter-notice.

71. In total, Plaintiff was forced to direct approximately twelve distinct DMCA submissions at a single YouTube URL between August 2025 and May 2026 because YouTube/Google repeatedly restored or permitted the return of the identical content on the strength of counter-notifications it had been shown, with certified court records, to be perjured.

**G. Lockout of the Verified Rights Holder**

72. Simultaneously, and as a direct result of alerting the platforms to these fraudulent activities, Plaintiff has been systematically locked out of, blocked from, or denied rightful administrative access and control over his legitimate creative accounts and title pages across the Defendants' networks — including his own IMDb title page and profile — effectively paralyzing his film business, while the admitted non-owner retained the ability to upload, alter metadata, and maintain public distribution.

## V. THE PLATFORM DEFENDANTS' ACTUAL KNOWLEDGE OF THE CONTRACT, THE CCB RECORD, AND THE PERJURY

73. Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

74. At all times relevant to this action, Plaintiff provided each Platform Defendant with direct, certified documentation of both of his United States Copyright Registrations governing the work: Registration No. TXu 2-316-481 (script/text of **For Lila**) and Registration No. PAu 4-283-541 (final audiovisual motion picture of **For Lila**).

75. To prove the falsity of Myers's claims, Plaintiff provided the Platform Defendants with the controlling Crew Deal Memo, whose explicit terms reserve 100% of the script, 90% of the footage, and all sale, distribution, marketing, advertising, and promotion rights to Croatan Productions, expressly "without interference from said contractor."

76. Despite having these explicit contractual terms in their possession — proving Myers had no distribution or marketing authority whatsoever — the Platform Defendants systematically chose to accept, process, and rely upon formal DMCA counter-notifications submitted by Myers to reinstate the infringing content.

77. Myers's counter-notifications to IMDb/Amazon, YouTube/Google, and Instagram/Meta variously swore, under penalty of perjury, that he held "contractual authorship and ownership rights to the final film," and that the Copyright Claims Board had "adjudicated" the dispute, "determined that Mr. Bryant's infringement claim failed as a matter of law," and established Myers as a lawful "co-owner" of the work.

78. Every one of those representations was materially false. Myers withheld from the platforms that he was himself the subject of the CCB's Second Noncompliance Order dated September 25, 2025 for his own bad-faith procedural failures; that the CCB matter carried no adjudication of title; and that it was dismissed without prejudice solely because Plaintiff elected to elevate the dispute to federal district court. In total, Plaintiff has documented at least **fourteen (14)** false counter-notifications sworn by Myers under penalty of perjury across the Platform Defendants' networks between September 2025 and May 2026 — each one actionable against him under 17 U.S.C. § 512(f), and each one processed and given effect by a Platform Defendant.

79. Plaintiff immediately provided each Platform Defendant with the true, certified records: the CCB noncompliance and dismissal orders, the active federal docket, the controlling contract, and — conclusively — Myers's own sworn court submissions, including his September 25, 2025 courtroom admission and his D.E. 56 admission that the CCB proceeding conferred no rights, in which Myers admitted under oath that he does not own the underlying copyright to the work.

80. Despite direct access to the infringer's own sworn judicial admissions of non-ownership, the Platform Defendants willfully ignored the legal reality of the court record and chose instead to honor automated, out-of-court DMCA counter-notices, allowing an admitted non-rights-holder to override the verified federal registrations of the true owner.

81. Plaintiff further placed the Platform Defendants on explicit notice that Myers was deliberately altering Plaintiff's protected properties — including cutting and modifying trailers to delete the production company's logo — to create a false impression of authorship and obtain unverified credits across the Defendants' networks.

82. By continuing to reinstate, host, and display the infringing media, unverified credits, and festival submissions after being shown conclusive proof of the fraud, the Platform Defendants forfeited any statutory immunity under the DMCA safe

harbor, 17 U.S.C. § 512, and became knowing participants in contributory and vicarious copyright infringement.

## VI. SYSTEMIC PROCEDURAL VIOLATIONS: FAILURE TO ADOPT AND REASONABLY IMPLEMENT REPEAT-INFRINGER POLICIES

83. Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

84. Under 17 U.S.C. § 512(i), a service provider qualifies for safe harbor only if it has adopted and reasonably implemented a policy providing for the termination, in appropriate circumstances, of subscribers and account holders who are repeat infringers.

85. Instagram/Meta violated its own repeat-infringer policy and the statutory mandate. Having banned Myers's primary account, it thereafter permitted him — despite Plaintiff's repeated, specific reports, including the April 20, 2026 ban-evasion report — to operate duplicate and ghost accounts distributing the same infringing material, willfully failing to police its network against a user it had itself blacklisted.

86. IMDb/Amazon committed a gross procedural breach of its own contributor guidelines and industry standards: after receiving valid proof of federal title, it locked, restricted, and blocked the verified copyright holder from accessing, updating, or maintaining his own official title page, while simultaneously permitting the unverified infringer to maintain active distribution, upload corrupted metadata, and publicly post the unauthorized trailer on his personal IMDb profile.

87. Vimeo and YouTube/Google repeatedly accepted boilerplate, robo-signed counter-notifications from the same user after being provided certified court records proving the user's claims rested on documented material perjury and contract fraud, and — in YouTube/Google's case — affirmatively misapplied 17 U.S.C. § 512(g)(2)(C) by treating Plaintiff's timely notice of filed federal litigation as a ground to decline removal rather than as the statutory bar against restoration.

88. FilmFreeway/Backstage continued to transmit and give effect to festival submissions from an account it had assured Plaintiff in writing was restricted, each submission carrying a rights warranty FilmFreeway knew to be false.

89. By locking out the legitimate rights holder, failing to implement ban-circumvention controls, permitting ghost accounts, honoring perjured counter-notices over certified judicial records, and continuing to derive revenue from the infringing activity, each Platform Defendant failed to reasonably implement a repeat-infringer policy within the meaning of § 512(i) and independently forfeited safe harbor eligibility.

## VII. CAUSES OF ACTION

**COUNT I — CONTRIBUTORY COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 106, 501) (Against All Defendants)**

90. Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

91. Plaintiff owns valid, registered copyrights in the **For Lila** screenplay and motion picture. Myers's uploads, submissions, displays, and distributions of the work and derivative excerpts, trailers, and materials on the Defendants' platforms constituted direct infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106.

92. Each Platform Defendant had actual knowledge of the direct infringement — through Plaintiff's takedown notices, the certified registrations, the controlling contract, the CCB record, and Myers's own sworn judicial admissions of non-ownership — or was, at minimum, willfully blind to it.

93. With that knowledge, each Platform Defendant materially contributed to the infringement by hosting, restoring, reinstating, transmitting, and displaying the infringing content; by processing and giving effect to counter-notifications it knew or should have known were perjured; by declining to remove content in defiance of 17 U.S.C. § 512(g)(2)(C); and by providing the site, facilities, and audience for the continued infringement after notice.

94. Each Platform Defendant had simple measures available to prevent the continuing infringement — maintaining the removals it had already effected, honoring the statutory bar on restoration, enforcing its own written restriction assurances, and terminating a documented repeat infringer — and declined to take them.

95. The Platform Defendants' conduct was willful within the meaning of 17 U.S.C. § 504(c)(2). Plaintiff has been damaged and, absent injunctive relief, will continue to suffer irreparable harm.

**COUNT II — VICARIOUS COPYRIGHT INFRINGEMENT (Against All Defendants)**

96. Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

97. Each Platform Defendant possessed the right and practical ability to supervise and control the infringing activity on its platform, as demonstrated by its own conduct: each Defendant in fact removed, restricted, banned, or restored the very content and accounts at issue at various times.

98. Each Platform Defendant derived a direct financial benefit from the infringing activity, including advertising revenue, subscription and membership revenue, festival submission fees and platform commissions, user engagement, and the draw of infringing content to its service.

99. Notwithstanding its right and ability to control the activity and its financial interest in it, each Platform Defendant declined to stop the infringement, rendering it vicariously liable for Myers's direct infringement.

**COUNT III — DECLARATORY JUDGMENT (28 U.S.C. §§ 2201–2202) (Against All Defendants)**

100. Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

101. An actual, justiciable controversy exists between Plaintiff and the Defendants concerning ownership of **For Lila**, the effect of the CCB dismissal, the validity of the counter-notifications the Defendants have honored, and the Defendants' entitlement to the safe harbor of 17 U.S.C. § 512.

102. Plaintiff seeks a declaration that: (a) Plaintiff is the sole owner of all copyright interests in the **For Lila** screenplay and motion picture; (b) the Copyright Claims Board proceeding, CCB Docket No. 25-CCB-0397, was dismissed without prejudice, adjudicated nothing, and conferred no rights on Malik Myers; (c) the counter-notifications submitted by Myers and honored by the Defendants contained material misrepresentations within the meaning of 17 U.S.C. § 512(f); and (d) by the conduct alleged herein, each Defendant failed to satisfy the conditions of 17 U.S.C. §§ 512(c), 512(g), and 512(i) and is not entitled to safe harbor protection for the infringements alleged.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against the Defendants, jointly and severally as appropriate, as follows:

A. A permanent injunction under 17 U.S.C. § 502 requiring each Defendant to remove and disable access to all infringing copies, excerpts, trailers, behind-the-scenes materials, and derivative works of For Lila on its platform, and prohibiting reinstatement of any such material absent further order of a court of competent jurisdiction;

B. An order requiring each Defendant to terminate or permanently restrict the accounts, profiles, and submission privileges used by Malik Myers, and any duplicate or successor accounts, with respect to For Lila;

C. An order requiring IMDb.com, Inc. and Amazon.com, Inc. to correct the credits and metadata for the For Lila title listing (IMDb Title No. tt32333098), to remove the unauthorized credits and award listings procured through the infringing submissions, and to restore Plaintiff's administrative access to his own title page, profile, and accounts;

D. An order requiring Backstage, LLC to produce the complete FilmFreeway submission records for the infringing account, to notify each festival that

received an unauthorized submission of For Lila, and to permanently bar further submissions of the work by anyone other than Plaintiff;

E. An award of Plaintiff's actual damages and the Defendants' profits attributable to the infringement, or, at Plaintiff's election, statutory damages, enhanced for willfulness, under 17 U.S.C. § 504;

F. The declaratory relief requested in Count III;

G. Plaintiff's full costs under 17 U.S.C. § 505;

H. Pre- and post-judgment interest as permitted by law; and

I. Such other and further relief as the Court deems just and proper.

## IX. DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: July 20, 2026

**Kaitron Bryant**
Plaintiff, Pro Se
295 Johnston Ave, Apt 507
Jersey City, New Jersey 07304