**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KAITRON BRYANT, | |
| Plaintiff, | Docket No. 2:26-CV-08949-JXN |
| v. | Honorable Julien Xavier Neals |
| BACKSTAGE, LLC, ET AL., | Motion Day: November 2, 2026 |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS GOOGLE LLC AND YOUTUBE, LLC'S MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1

BACKGROUND .......... 2

A. Bryant's Film *For Lila* and His Two Failed Infringement Actions Against Co-Owner and Director Malik Myers. .......... 2

B. Plaintiff Sues YouTube in This Action, Asserting the Same Acts of Alleged Infringement that Have Been Rejected Twice. .......... 5

LEGAL STANDARD .......... 6

ARGUMENT .......... 7

A. Bryant's Copyright Infringement Claims Against YouTube Are Barred by Collateral Estoppel. .......... 7

B. Regardless of Whether Collateral Estoppel Applies, Plaintiff's Own Allegations and Materials Integral to the Complaint Demonstrate that Myers Is a Co-Owner and Cannot Infringe the *For Lila* Film. .......... 11

C. Bryant's Contributory Infringement Claim Separately Fails Because He Does Not Plausibly Allege that YouTube Induced, or Is Tailored to, the Alleged Infringement. .......... 13

D. Bryant's Vicarious Infringement Claim Separately Fails Because He Does Not Allege that Myers' Videos "Drew" Users to the Service. .......... 16

E. Bryant's Declaratory Judgment Cause of Action Also Fails. .......... 18

F. Bryant's Claims Should Be Dismissed Without Leave to Amend. .......... 19

CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Art Recs. LLC v. YouTube LLC*,
2026 WL 1669167 (N.D. Cal. June 9, 2026) ........ 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6, 17

*Baker Legacy Preservation Tr. v. U.S. Bank Tr. Nat'l Ass'n*,
2026 WL 1229780 (D.N.J. May 5, 2026) ........ 7

*Barnes v. Sanchez*,
2026 WL 1912085 (N.D. Cal. July 2, 2026) ........ 14

*Baucum v. Rutgers Univ.*,
2025 WL 3754177 (D.N.J. Dec. 29, 2025) ........ 12

*Brownstein v. Lindsay*,
742 F.3d 55 (3d Cir. 2014) ........ 9, 12

*Bryant v. Myers*,
2026 WL 2322894 (D.N.J. Aug. 11, 2026) ........ *passim*

*Bryant v. Myers*,
2026 WL 560221 (D.N.J. Feb. 27, 2026) ........ 3, 4, 9, 10

*Bryant v. Myers*,
No. 25-CCB-0397 (CCB Sept. 30, 2025) ........ 3, 4

*Bryant v. Myers*,
No. 26-1459 (3d Cir.) ........ 5

*Connelly v. Lane Constr. Corp.*,
809 F.3d 780 (3d Cir. 2016) ........ 7

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
607 U.S. 583 (2026) ........ 2, 14, 15, 16

*Davis v. Wells Fargo*,
824 F.3d 333 (3d Cir. 2016) ........ 6

*Defense Distributed v. Platkin*,
697 F. Supp. 3d 241 (D.N.J. 2023) ........ 12

*Dore v. Chris Brown Ent.*,
2026 WL 539588 (D.N.J. Feb. 25, 2026) ....7

*Eight Mile Style, LLC v. Meta Platforms, Inc.*,
2026 WL 1735026 (E.D. Mich. June 16, 2026)....14, 16

*El v. New Jersey*,
2023 WL 4108923 (D.N.J. June 21, 2023) ....10

*Ellison v. Robertson*,
357 F.3d 1072 (9th Cir. 2004) ....16

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
443 F.2d 1159 (2d Cir. 1971)....16

*Gibbs-Squires v. Cosby*,
2017 WL 5515916 (E.D. Pa. Mar. 7, 2017)....8

*Grayson v. Mayview State Hosp.*,
293 F.3d 103 (3d Cir. 2002)....19

*Great W. Mining & Min. Co. v. Fox Rothschild LLP*,
615 F.3d 159 (3d Cir. 2010)....19

*HP Holding LLC v. Red Roof Inns, Inc.*,
2024 WL 2720463 (D.N.J. May 28, 2024) ....2

*In re AZEK Bldg. Prods., Inc., Mktg. &Sales Pracs. Litig.*,
82 F. Supp. 3d 608 (D.N.J. 2015) ....18

*ITT Corp. v. Intelnet Int'l*,
366 F.3d 205 (3d Cir. 2004)....10

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
458 F.3d 244 (3d Cir. 2006)....11

*Jenkins v. New Jersey*,
2011 WL 1466124 (D.N.J. Apr. 15, 2011) ....19

*Kabbaj v. Google Inc.*,
592 F. App'x 74 (3d Cir. 2015) ....18

*Kaetz v. United States*,
2023 WL 2706841 (D.N.J. Mar. 30, 2023)....7

*Kelley v. Universal Music Grp.*,
2015 WL 6143737 (S.D.N.Y. Oct. 19, 2015) ....13

*Lee v. SBS Corp.*,
2026 WL 2261023 (C.D. Cal. Aug. 5, 2026)....16

*Leonard v. Stemtech Int'l Inc.*,
834 F.3d 376 (3d Cir. 2016)....7, 11

*Mapp v. Weltman Weinberg & Reis, Co., LPA*,
2025 WL 2058146 (D.N.J. July 22, 2025)....7

*Mills v. Ethicon, Inc.*,
406 F. Supp. 3d 363 (D.N.J. 2019)....2

*Mishiyev v. YouTube LLC*,
2025 WL 1223556 (N.D. Cal. Apr. 28, 2025)....18

*Parker v. Google, Inc.*,
242 F. App'x 833 (3d Cir. 2007)....16

*Parker v. PayPal, Inc.*,
2017 WL 3508759 (E.D. Pa. Aug. 16, 2017)....17

*Peloro v. United States*,
488 F.3d 163 (3d Cir. 2007)....7, 8

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017)....17

*Prospect Funding Holdings, LLC v. Breen*,
2018 WL 734665 (D.N.J. Feb. 5, 2018)....8

*Ross v. Meyer*,
741 F. App'x 56 (3d Cir. 2018)....8

*Scalercio-Isenberg v. Select Portfolio Servicing, Inc.*,
2024 WL 378652 (D.N.J. Jan. 31, 2024)....8

*Shulman v. McDonald's USA, LLC*,
2025 WL 1640267 (D.N.J. June 10, 2025)....18

*Smith v. Hayman*,
2012 WL 1079634 (D.N.J. Mar. 30, 2012)....10

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023)....16

*United States v. 5 Unlabeled Boxes*,
572 F.3d 169 (3d Cir. 2009)....8, 10

*Vega v. Iveley, LLC*,
2026 WL 1855891 (D.N.J. June 29, 2026)........6, 18

*Vianix Del. LLC v. Nuance Commc'ns, Inc.*,
2009 WL 1364346 (D. Del. May 12, 2009)........13

**STATUTES**

17 U.S.C. § 106........9

17 U.S.C. § 201(a)........12

17 U.S.C. § 204(a)........4, 12

17 U.S.C. § 501(b)........13

17 U.S.C. § 512(f)........18, 19

17 U.S.C. § 512(g)........5

17 U.S.C. § 512(l)........15

**MISCELLANEOUS**

H.R. Rep. No. 105-551, pt. 2 (1998)........15

Restatement (2d) of Judgments........8, 10

## INTRODUCTION

This case is the third time Plaintiff Kaitron Bryant has asked a tribunal to find that Malik Myers infringed his copyright in the film *For Lila* by screening and promoting it without Bryant's permission, and his claims fail for the same threshold reason: Myers is a co-owner of the film's footage, and a co-owner cannot infringe a work he owns. The Copyright Claims Board ("CCB") identified that defect when it dismissed Bryant's first action without prejudice in September 2025, and a court in this District agreed when it dismissed his second action with prejudice in February 2026 and denied a motion to vacate the judgment in August 2026. Now, Bryant has filed a third action that recasts the same infringement allegations against the technology platforms that allegedly hosted Myers' promotional videos on the internet. That reframing cannot save his claims.

This time, rather than suing Myers directly, Bryant asserts claims for secondary copyright infringement against Defendants Google LLC and YouTube, LLC (together, "YouTube"), among other technology platforms, because it allegedly hosted copies of the *For Lila* trailer that Myers uploaded to its service. But secondary liability claims require an underlying act of direct copyright infringement by a third party, and the only such act Bryant pleads is Myers' display and distribution of footage from *For Lila*—a claim that another court in this District has already dismissed with prejudice. Collateral estoppel thus bars Bryant from relitigating the determination that Myers' actions did not constitute copyright infringement, which dooms his secondary claim against YouTube. The result is the same even without issue preclusion: the "controlling" contract that was "executed for the production of For Lila," Dkt. No. 1 ("Compl.") ¶ 17, shows that Myers was the film's director and editor and holds a "10% stake owner ship [sic] of said footage," Declaration of Eric K. Nikolaides ("Nikolaides Decl."), Ex. A at 1. Thus, even on the face of Bryant's allegations, Myers is a co-owner who cannot infringe.

Each claim also fails for reasons apart from copyright ownership. Bryant's contributory infringement claim rests on the premise that YouTube knew about Myers' uploads and declined to remove them. But the Supreme Court has held that contributory liability requires ***intent***: active inducement of infringement, or a service tailored to it. *Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 583, 592-93 (2026). Bryant pleads no such thing. Nor does Bryant's vicarious infringement claim fare any better: Bryant alleges no facts connecting Myers' uploads directly to any financial benefit YouTube received. And his standalone "declaratory judgment" count is similarly deficient.

Because the Complaint's defects are structural, no amount of repleading will be able to repair them. Having pressed the same theory before the CCB, another court in this District, and now this Court, Bryant should not be afforded a fourth try. The Complaint should be dismissed with prejudice.

## BACKGROUND

### A. Bryant's Film *For Lila* and His Two Failed Infringement Actions Against Co-Owner and Director Malik Myers.

Bryant, representing himself in this action, is an independent film producer and alleged copyright owner of a motion picture called *For Lila*. Compl. ¶ 8. Myers, who is not a party to this action, is the film's director and editor. Nikolaides Decl., Ex. A ("Crew Deal Memo") at 1.[1] Bryant alleges that he and Myers "executed" an agreement, called the "Crew Deal Memo," that would

[1] The Complaint affirmatively alleges that the Crew Deal Memo was the "controlling" document establishing Myers' interest in the film, and it extensively quotes and relies upon the Crew Deal Memo's operative terms. *See, e.g.*, Compl. ¶¶ 17, 22, 75. The memo is therefore integral to, and incorporated by reference in, the Complaint, and the Court may consider its terms in resolving YouTube's motion. *See, e.g.*, *HP Holding LLC v. Red Roof Inns, Inc.*, 2024 WL 2720463, at *4 (D.N.J. May 28, 2024) (on motion to dismiss, "a court may consider documents that are integral to or explicitly relied upon in the complaint") (quoting *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 372 (D.N.J. 2019)).

"control[] . . . the production of *For Lila*." *See* Compl. ¶ 17. Pursuant to a section of that agreement titled "PAYMENT AND OWNERSHIP TERMS," Myers has a "10% stake owner ship [sic]" in the *For Lila* film footage. Crew Deal Memo at 1.

According to Bryant, in 2025 Myers began submitting *For Lila* to film festivals and promoting it without Bryant's authorization. Compl. ¶ 23. Bryant contended that Myers' activities infringed his copyright in the film, so he instituted a proceeding before the Copyright Claims Board ("CCB") in September 2025. *Id.* ¶ 20; *see also Bryant v. Myers*, No. 25-CCB-0397, Dkt. No. 1 (CCB Sept. 16, 2025). On September 30, 2025, the CCB dismissed Bryant's claim without prejudice for noncompliance with statutory prerequisites, reasoning that Bryant "seems to acknowledge that [Myers] served as the film's director, editor, and casting director" and that the Crew Deal Memo "shows that [Bryant] gave [Myers] a 10% ownership interest" in *For Lila*. *Bryant v. Myers*, No. 25-CCB-0397, Dkt. No. 6 at 1 (CCB Sept. 30, 2025); *see also* Nikolaides Decl. ¶ 5, Ex. B (copy of CCB order). The CCB explained that "[a]s a matter of basic copyright law, co-owners of a copyright cannot be liable to one another for infringement of that copyright." *Id.* The CCB concluded that because Myers "co-owns the footage that constitutes 'For Lila,' he cannot infringe its copyright, and this infringement claim cannot prevail." *Id.*

Undeterred, Bryant filed a new infringement action in this District on October 16, 2025. Compl. ¶¶ 20-21; *see also Bryant v. Myers*, No. 2:25-cv-16688, Dkt. No. 1 (D.N.J. Oct. 16, 2025) ("*Myers* Compl."). That case asserted the same alleged infringement: that Myers promoted and screened *For Lila* even though "he had no authorization to use or exhibit" the film. *See Myers* Compl. ¶¶ 1-6.

On February 27, 2026, the court dismissed Bryant's claims with prejudice. *Bryant v. Myers*, 2026 WL 560221, at *1 (D.N.J. Feb. 27, 2026). Its dismissal rested on two independent bases: (1)

that Bryant's claims were precluded by the CCB's dismissal, and (2) that Myers' ownership interest in *For Lila* was separately fatal to Bryant's claims. *Id.* at *2. The court also rejected Bryant's attempt to "circumvent that outcome by alleging that he is the sole copyright owner of the underlying screenplay." *Id.* Rather, Bryant's claims were "based upon the display of the 'For Lila' *film*, an audiovisual work that Plaintiff agreed to work with Defendant on and which both parties hold a joint copyright over," so it was "immaterial who owns the copyright over the underlying screenplay." *Id.* The court accordingly dismissed Bryant's claims with prejudice. *Id.* at *3.

Bryant appealed, *Myers*, Dkt. No. 57, and also filed a motion to vacate the order dismissing the case under Rule 60(b)(3), *id.*, Dkt. No. 60. On August 11, 2026, the court denied Bryant's motion to vacate. *Bryant v. Myers*, 2026 WL 2322894, at *1 (D.N.J. Aug. 11, 2026). While it withdrew the prior order's claim preclusion analysis, the court concluded that "regardless of the CCB proceeding, Defendant's ownership interest in the 'For Lila' film defeated Plaintiff's infringement claim against him because a copyright co-owner generally may use or license the jointly owned work without committing copyright infringement against another co-owner." *Id.* at *2. Bryant did not "explain why the Court misread the parties' agreement, why Defendant lacked an ownership interest in the film, or why a co-owner may be liable for infringing the jointly owned work." *Id.* at *3. The court also rejected Bryant's argument that the Copyright Act's statute-of-frauds provision—17 U.S.C. § 204(a)—defeated Myers' ownership interest, explaining that while "Section 204(a) governs transfers of copyright ownership, it does not establish that every ownership interest must arise through a transfer, rather than through initial joint authorship." *Id.* And it reaffirmed that "because Plaintiff challenged Defendant's display of the completed film—not use of the underlying screenplay—it was immaterial who owns the copyright over the

underlying screenplay." *Id.* at *2. The court concluded that "Plaintiff has not established that he is entitled to relief from judgment because the independent co-ownership ruling remains a sufficient basis for dismissal, and Plaintiff has not shown that ruling to be erroneous." *Id.* at *3.

Bryant's appeal of the judgment against him remains pending before the Third Circuit. *See Bryant v. Myers*, No. 26-1459 (3d Cir.).

**B. Plaintiff Sues YouTube in This Action, Asserting the Same Acts of Alleged Infringement that Have Been Rejected Twice.**

Despite the dismissal of his two prior infringement claims, Bryant has now filed yet another complaint arising from the same allegations against Myers. On July 20, 2026, Bryant filed this pro se action against the technology companies that allegedly hosted or were otherwise used in Myers' efforts to promote the *For Lila* film. Bryant asserts contributory and vicarious copyright infringement claims against Vimeo, Inc., Backstage, LLC, IMDb.com, Inc., Amazon.com, Inc., YouTube, LLC, Google LLC, and Meta Platforms, Inc. Compl. at 1.

Bryant's claims against YouTube arise from an allegedly unauthorized copy of the *For Lila* trailer that Myers uploaded to its service. *Id.* ¶¶ 59, 91. The YouTube-specific allegations center on the trailer at "a single YouTube URL," *id.* ¶ 71, and one additional allegedly "derivative upload" of that trailer, *id.* ¶ 61. Although Bryant asserts a separate registered copyright in the *For Lila* screenplay, *id.* ¶¶ 16, 91, he does not allege that YouTube hosted, displayed, or otherwise copied the screenplay, that Myers uploaded the screenplay or its text to YouTube, or that the trailer at issue was somehow a copy of the screenplay. Bryant alleges that he submitted takedown notices under the Digital Millennium Copyright Act ("DMCA") asking YouTube to remove the supposedly unauthorized trailer, and that YouTube responded by removing the video. *Id.* ¶¶ 59-60. Myers allegedly then submitted counter-notifications under 17 U.S.C. § 512(g) representing, under penalty of perjury, that the CCB had dismissed Bryant's claim and found Myers to be a co-

owner of the film. *Id.* ¶¶ 61-62. Bryant alleges that he responded with documentation of his copyright registrations and the pending lawsuit against Myers, *id.* ¶¶ 61, 63, but that YouTube reinstated Myers' video and later declined Bryant's further takedown demand, *id.* ¶¶ 63, 68. Myers allegedly submitted at least four additional counter-notifications in defense of his right to upload the *For Lila* trailer to YouTube. *Id.* ¶ 69.

Based on the alleged exchange of takedown notices of claimed infringement and counter-notifications, Bryant contends YouTube "became [a] knowing participant[] in contributory and vicarious copyright infringement." *Id.* ¶ 82. The Complaint alleges that YouTube is contributorily liable for Myers' alleged copyright infringement because it "had actual knowledge of the direct infringement"; because it "materially contributed to the infringement"; and that it "had simple measures available to prevent the continuing infringement" but "declined to take them." *Id.* ¶¶ 92-94. Bryant also alleges that YouTube is vicariously liable for Myers' infringement, *id.* ¶¶ 97-99, and seeks various forms of declaratory relief, *id.* ¶ 102.

## LEGAL STANDARD

A complaint that fails to state a claim upon which relief can be granted may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Vega v. Iveley, LLC*, 2026 WL 1855891, at *3 (D.N.J. June 29, 2026) (Neals, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts must "disregard[] legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)). A plaintiff must "show more than a sheer possibility that a defendant has acted unlawfully," and instead allege "sufficient facts to raise a reasonable expectation that discovery will uncover proof of his or her

claims." *Mapp v. Weltman Weinberg & Reis, Co., LPA*, 2025 WL 2058146, at *2 (D.N.J. July 22, 2025) (Neals, J.) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786, 789 (3d Cir. 2016)).

Although "claim and issue preclusion are affirmative defenses, [] they may be raised on a motion to dismiss in an appropriate case." *Kaetz v. United States*, 2023 WL 2706841, at *5 (D.N.J. Mar. 30, 2023). "The Court can take judicial notice of filings" in a previous action "for the purpose of analyzing issue preclusion." *Baker Legacy Preservation Tr. v. U.S. Bank Tr. Nat'l Ass'n*, 2026 WL 1229780, at *3 n.5 (D.N.J. May 5, 2026).

## ARGUMENT

### A. Bryant's Copyright Infringement Claims Against YouTube Are Barred by Collateral Estoppel.

It is a basic precept of copyright law that secondary liability "does not exist in the absence of direct infringement by a third party. Thus, to prove a claim of contributory or vicarious infringement, a plaintiff must first show direct copyright infringement by a third party." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016); *accord Dore v. Chris Brown Ent.*, 2026 WL 539588, at *5-6 (D.N.J. Feb. 25, 2026) (contributory and vicarious infringement claims against YouTube "ultimately fail[] because [they] hinge[] on a preliminary finding of direct infringement," which plaintiff "did not adequately allege"). Bryant attempts to meet this requirement by alleging that YouTube contributed to—and is vicariously liable for—Myers' acts of promoting the *For Lila* film. *See, e.g.*, Compl. ¶ 1. But that claim against Myers has already been dismissed with prejudice by another court in this District, and any attempt to relitigate it here is barred by collateral estoppel. Bryant's secondary liability claims against YouTube are therefore missing an underlying direct infringement predicate, so they must be dismissed.

Under the doctrine of collateral estoppel—also known as issue preclusion—parties may not relitigate an issue that has already been litigated. *Peloro v. United States*, 488 F.3d 163, 174

(3d Cir. 2007). "The prerequisites for the application of issue preclusion are satisfied when (1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *Id.* at 174-75 (citation omitted). Significantly, the parties to the second suit need not be the same as the parties to the first suit: a "defendant who was not a party to the first suit can, where the requirements of the doctrine are met, use issue preclusion defensively against a plaintiff to prevent the plaintiff from relitigating an issue it lost in the earlier suit." *Prospect Funding Holdings, LLC v. Breen*, 2018 WL 734665, at *4 (D.N.J. Feb. 5, 2018).

Moreover, it is "well-established that prior judgments still have preclusive effect even if they potentially contain errors," *Scalercio-Isenberg v. Select Portfolio Servicing, Inc.*, 2024 WL 378652, at *8 n.4 (D.N.J. Jan. 31, 2024) (collecting cases), and the "pendency of an appeal does not affect the potential for res judicata flowing from an otherwise-valid judgment," which will "customarily be given preclusive effect even though an appeal is pending," *United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 175 (3d Cir. 2009) (citing Restatement (2d) of Judgments, § 13, cmt. f); *accord Ross v. Meyer*, 741 F. App'x 56, 60 (3d Cir. 2018). Issues decided on a Rule 12(b)(6) motion to dismiss in one case are frequently found to be preclusive in other cases. *See, e.g.*, *Scalercio-Isenberg*, 2024 WL 378652, at *6-7; *accord Gibbs-Squires v. Cosby*, 2017 WL 5515916, at *5 (E.D. Pa. Mar. 7, 2017).

Here, each requirement is plainly satisfied. ***First***, the issue sought to be precluded is the same. In the prior action, Bryant asserted that Myers infringed his copyright by "publish[ing] and circulat[ing]" *For Lila* "on LinkedIn, Vimeo, and other platforms" even though Myers allegedly "had no authorization to use or exhibit" the film. *Myers* Compl. ¶¶ 1, 5. The identical issue is presented here. Bryant's claims against YouTube rest on the premise that "Myers's uploads,

submissions, displays, and distributions of the work" on YouTube "constituted direct infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106." Compl. ¶ 91. But the *Myers* court already concluded that Myers' "joint ownership of the 'For Lila' film necessarily dooms ***any claim*** Plaintiff brings against him of copyright infringement," *Myers*, 2026 WL 560221, at *3 (citing *Brownstein v. Lindsay*, 742 F.3d 55, 68-69 (3d Cir. 2014)) (emphasis added), because a copyright co-owner "generally may use or license the jointly owned work without committing copyright infringement against another co-owner," *Myers*, 2026 WL 2322894, at *2 (collecting cases). Moreover, the *Myers* court concluded that it was "immaterial who owns the copyright over the underlying screenplay because Plaintiff's claims are based upon the display of the 'For Lila' *film*, an audiovisual work." *Myers*, 2026 WL 560221,at *2; *see also Myers*, 2026 WL 2322894, at *2. Bryant cannot plead around those determinations by relabeling Myers' conduct as the predicate for a secondary liability theory against YouTube.

***Second***, the issue was actually litigated. The question of Myers' co-ownership was decided by the district court ***twice***. Bryant affirmatively litigated ownership through multiple filings subsequent to Myers' motion to dismiss, including *Myers*, Dkt. No. 31 (attacking Myers' "false ownership narrative" and "false assertions of ownership"), Dkt. No. 33 (discussing "evidence relevant to ownership"), and Dkt. No. 44 ("Plaintiff's Motion to Estop Defendant Malik Myers from Asserting Ownership or Distribution Rights"), among others. Although the Clerk initially entered a default against Myers, the Court denied Bryant's motions for a default judgment, *see id.*, Dkt. Nos. 22, 27, and decided the co-ownership question on Myers' Rule 12(b)(6) motion, *Myers*, 2026 WL 560221, at *2. Bryant then placed the issue before the court again by moving to vacate the judgment and stay the case pending appeal, *id.*, Dkt. Nos. 60, 61, but the court rejected his arguments, *Myers*, 2026 WL 2322894, at *2-3. As the court explained, Bryant "had a full

opportunity to oppose Defendant's motion to dismiss and submit the materials he believed relevant," *id.* at *2, yet never "explain[ed] why the Court misread the parties' agreement [or] why Defendant lacked an ownership interest in the film," *id.* at *3. An issue that was raised by the Complaint, put at issue by Myers in a dispositive motion, addressed by Bryant in numerous filings, decided, and affirmed, has been "actually litigated." *See, e.g.*, *ITT Corp. v. Intelnet Int'l*, 366 F.3d 205, 211 n.10 (3d Cir. 2004) ("When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination and is determined, the issue is actually litigated" for preclusion purposes) (quoting Restatement (2d) of Judgments, § 27, cmt. d); *accord Smith v. Hayman*, 2012 WL 1079634, at *16 n.5 (D.N.J. Mar. 30, 2012) ("'Actually litigated' means properly raised in an earlier lawsuit, submitted to the court for a determination, and determined.").

***Third***, the issue was determined by a final and valid judgment. The *Myers* court dismissed Bryant's action with prejudice, *Myers*, 2026 WL 560221, at *3, which is a "final judgment on the merits," *El v. New Jersey*, 2023 WL 4108923, at *4 (D.N.J. June 21, 2023). Bryant's pending appeal "does not affect the potential for res judicata flowing from an otherwise-valid judgment." *5 Unlabeled Boxes*, 572 F.3d at 175. Indeed, the *Myers* court denied Bryant's request to stay its judgment pending Third Circuit review, finding he had not shown "a reasonable likelihood of obtaining reversal of the Dismissal Order's judgment" because he "has not demonstrated that the Court erred in concluding that Defendant held an ownership interest in the film or that Defendant could be liable for infringing a film that he co-owned." *Myers*, 2026 WL 2322894, at *4.[2]

[2] Bryant has suggested elsewhere, *see, e.g.*, Dkt. No. 47-1 at 6, that the *Myers* court somehow undermined its co-ownership determination when it denied his requested stay and observed that the dismissal order "merely dismissed and closed the action" and "did not authorize Defendant to use the film, transfer ownership, cancel Plaintiff's registration, or impose any affirmative obligation capable of being stayed," *Myers*, 2026 WL 2322894, at *4. Not so. Judge Padin's observation goes only to whether there was anything to stay: because a dismissal confers no affirmative relief, staying it "would not prevent the conduct Plaintiff fears." *Id.* The court did

***Fourth***, the determination of co-ownership was essential to the judgment. The *Myers* court said so directly: Myers' status as a co-owner was an "independent" and "sufficient basis for dismissal." *Id.* at *3; *see also id.* at *4 ("[T]he judgment [] remains supported by the Court's independent co-ownership ruling and remains in effect."). The dismissal was based on the court's co-ownership determination, *see id.*, so Bryant cannot dispute that it was essential to the judgment. *Cf. Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 255 (3d Cir. 2006) (adopting "the traditional view that independently sufficient alternative findings should be given preclusive effect").

Because each element is satisfied, Bryant is estopped from relitigating Myers' co-ownership of *For Lila* in this action. Bryant's contributory and vicarious infringement claims thus fail as a matter of law, *see Leonard*, 834 F.3d at 386, and should be dismissed with prejudice.

### B. Regardless of Whether Collateral Estoppel Applies, Plaintiff's Own Allegations and Materials Integral to the Complaint Demonstrate that Myers Is a Co-Owner and Cannot Infringe the *For Lila* Film.

Even if Bryant were not precluded from relitigating ownership here, his own allegations independently demonstrate that Myers is a co-owner of the *For Lila* film footage. Bryant has repeatedly put the Crew Deal Memo at issue in this litigation, including by invoking it in the Complaint as the "controlling" contract that was "executed for the production of For Lila," Compl. ¶ 17, and by directly emailing it to each Defendant's counsel at least three separate times in an attempt to "underscore[] the absence of any legal defense." Nikolaides Decl. ¶¶ 2-4. That document's "PAYMENT AND OWNERSHIP TERMS" directly state that Myers owns a "10% stake owner ship [sic]" in the *For Lila* footage. Nikolaides Decl., Ex. A ("Crew Deal Memo") at

---

not limit or otherwise qualify its co-ownership ruling in any way—the order goes on to confirm that "the judgment . . . remains supported by the Court's independent co-ownership ruling and remains in effect." *Id.*

1. Bryant's contrary gloss—that the interest is "a financial participation interest in footage proceeds only," Compl. ¶ 17—is a purported legal conclusion contradicted by the plain language of the controlling document. The Court accordingly need not credit it. *See, e.g.*, *Defense Distributed v. Platkin*, 697 F. Supp. 3d 241, 255 (D.N.J. 2023) (courts "may ignore legal conclusions" in resolving a Rule 12(b)(6) motion); *Baucum v. Rutgers Univ.*, 2025 WL 3754177, at *4 (D.N.J. Dec. 29, 2025) ("Where the complaint relies on incorporated documents, the Court . . . must credit the document where it conflicts with conclusory allegations.").

Nor can 17 U.S.C. § 204(a) save Bryant's claims. Elsewhere, Bryant has invoked that statutory provision to argue the Crew Deal Memo could not validly grant an ownership interest because the version Bryant shared with Defendants' counsel appears to be unsigned. *See, e.g.*, Dkt. No. 34-1 at 9. But even setting aside Bryant's affirmative allegation that the memo was "executed," *see* Compl. ¶ 17, the signed writing requirement only applies to the ***transfer*** of an existing copyright interest; it has nothing to say about an interest that arises through joint authorship, which vests by operation of law under 17 U.S.C. § 201(a) upon a work's creation. Here, Bryant's allegations demonstrate that Myers is a co-author of the *For Lila* film. The Crew Deal Memo memorializes Myers' "duties as director and editor" and his "Director" credit, Crew Deal Memo at 1-2, which indicates that Myers "contribute[d] some non-trivial amount of creative, original, or intellectual expression to the work" and that Bryant and Myers "intend[ed] that their contributions be combined," *Brownstein*, 742 F.3d at 64, regardless of whether it was signed. Accordingly, Myers was a joint author and co-owner of the audiovisual work from the moment of its creation. *See id.*

The separate copyright in the screenplay does not help Bryant, either. For one, Bryant does not allege that YouTube is secondarily liable for any infringement of the screenplay; instead, he

alleges only that Myers uploaded a trailer to YouTube. *See* Compl. ¶¶ 59-71. Bryant alleges no facts to explain how a trailer could be an infringing copy of an underlying written script. Nor does Bryant explain why ***he***, rather than a separate corporate entity, owns the copyright in the screenplay such that he would have standing to assert an infringement claim about it. Only "the legal or beneficial owner of an exclusive right under a copyright" may sue for infringement. 17 U.S.C. § 501(b). However, Bryant directly alleges that the screenplay is "registered to Croatan Productions," Compl. ¶ 16, and that "Croatan Productions will retain 100% of said film script," *id.* ¶ 17. Croatan Productions is not a plaintiff in this lawsuit, and Bryant cannot sue for infringement on its behalf. *See, e.g., Vianix Del. LLC v. Nuance Commc'ns, Inc.*, 2009 WL 1364346, at *1-2 (D. Del. May 12, 2009) (dismissing infringement claims where the named plaintiff was "not the owner of the copyrights" at issue); *Kelley v. Universal Music Grp.*, 2015 WL 6143737, at *3 (S.D.N.Y. Oct. 19, 2015) (dismissing infringement claims where the registration "identifies NYT and Eden, but not plaintiffs, as the copyright claimants of" the work at issue).

Because Plaintiff's own allegations establish that Myers holds a co-ownership interest in the *For Lila* film footage, he cannot, as a matter of law, infringe the copyright in that work by displaying or distributing the film, Thus, Bryant's secondary liability claims against YouTube—each of which requires an underlying act of direct infringement by Myers—fail at the threshold.

### C. Bryant's Contributory Infringement Claim Separately Fails Because He Does Not Plausibly Allege that YouTube Induced, or Is Tailored to, the Alleged Infringement.

Bryant alleges that YouTube is contributorily liable for Myers' alleged infringement because it "had actual knowledge of" and "materially contributed to the infringement." Compl. ¶¶ 92-93. This claim also fails for the independent reason that the Supreme Court has rejected Bryant's knowledge-plus-material-contribution theory of contributory liability.

In *Cox Communications, Inc. v. Sony Music Entertainment*, the Supreme Court held that the "provider of a service is contributorily liable for [a] user's infringement ***only if it intended that the provided service be used for infringement***." 607 U.S. at 592-93 (emphasis added). "The intent required for contributory liability can be shown only if the party [1] induced the infringement or [2] the provided service is tailored to that infringement." *Id.* at 593. "A provider induces infringement if it actively encourages infringement through specific acts," such as by "promot[ing] and market[ing] their software as a tool to infringe copyrights." *Id.* And a "service is tailored to infringement if it is not capable of substantial or commercially significant noninfringing uses." *Id.* (cleaned up). A defendant's mere "constructive knowledge" that individuals "may use [its] equipment to make unauthorized copies of copyrighted material" is insufficient to impose contributory liability." *Id.* at 594.

Here, Bryant's Complaint is devoid of well-pleaded facts that YouTube "***intended***" for its "service [to] be used for infringement." *Id.* at 592-93 (emphasis added). His contributory liability claim therefore fails. *See, e.g.*, *Art Recs. LLC v. YouTube LLC*, 2026 WL 1669167, at *2 (N.D. Cal. June 9, 2026) (dismissing contributory infringement claims against YouTube with prejudice because "Plaintiff does not allege, nor seemingly can it, that YouTube intends for its services to be used for infringement, or that YouTube has actively encouraged infringement through specific acts"); *Barnes v. Sanchez*, 2026 WL 1912085, at *6 (N.D. Cal. July 2, 2026) (similar); *Eight Mile Style, LLC v. Meta Platforms, Inc.*, 2026 WL 1735026, at *6 (E.D. Mich. June 16, 2026) (dismissing contributory infringement claim because "Plaintiff has not plausibly alleged facts sufficient to support either theory (affirmative inducement or a service tailored to infringement)").

The Complaint's bare allegation that YouTube "host[ed], restor[ed], reinstat[ed], transmit[ted], and display[ed]" and "provid[ed] the site, facilities, and audience for" the content

that Myers uploaded, Compl. ¶ 93, is insufficient to plausibly allege the "intent required for contributory liability" under *Cox*, *see* 607 U.S. at 593. Nor can Bryant show intent by alleging that YouTube could have terminated Myers' account. Compl. ¶ 94. The Supreme Court rejected that exact theory in *Cox*: imposing liability "merely for failing to terminate . . . infringing accounts would expand secondary copyright liability beyond our precedents." *Cox*, 607 U.S. at 595.

Engaging in the DMCA's notice-and-counter-notification exchange—taking content down on a takedown notice and restoring it on a facially valid counter-notification—is not the "active[] encourage[ment] of infringement through specific acts" that *Cox* requires, either. 607 U.S. at 593. Indeed, the Complaint describes a dispute of the kind Congress anticipated when two parties assert rights in the same content. By Bryant's account, he and Myers each made competing claims: Bryant's takedown notices asserted that the trailer was infringing while Myers' counter-notifications asserted co-ownership. *See, e.g.*, Compl. ¶¶ 59, 61. YouTube processed each in turn, including by asking Bryant for further documentation. *Id.* ¶¶ 59-69. A provider caught between rival claimants does not "actively encourage" infringement because it attempted to follow the DMCA's procedures rather than adjudicating title itself, *see, e.g.*, H.R. Rep. No. 105-551, pt. 2, at 61 (1998) (Congress did not intend to require service providers to "make difficult judgments as to whether conduct is or is not infringing"), even if a plaintiff contends that the provider applied those procedures incorrectly, *see* 17 U.S.C. § 512(l) ("The failure of a service provider's conduct to qualify for limitation of liability under this section shall not bear adversely upon the consideration of a defense by the service provider that the service provider's conduct is not infringing under [the Copyright Act] or any other defense."); *accord Cox*, 607 U.S. at 596 (the DMCA does not "impose liability for Internet service providers who serve known infringers," but "merely creates new *defenses* from liability for such providers").

Nor can Bryant show that YouTube is incapable of "substantial or commercially significant noninfringing uses." *Cox*, 607 U.S. at 593 (citation omitted). YouTube is a general purpose video platform that lawfully enables millions of users worldwide to share content. *See, e.g., Twitter, Inc. v. Taamneh*, 598 U.S. 471, 480 (2023) ("[T]he amount of content on [YouTube's] platform is staggering . . . for *every minute* of the day, approximately 500 hours of video are uploaded to YouTube."); *see also Lee v. SBS Corp.*, 2026 WL 2261023, at *5 (C.D. Cal. Aug. 5, 2026) ("Plaintiff also has not plausibly alleged facts giving rise to an inference that YouTube's service is tailored to infringement . . . Merely providing a service that has infringing and non-infringing uses [] does not automatically constitute infringement.") (quoting *Eight Mile Style*, 2026 WL 1735026, at *5). Because Bryant has not, and cannot, allege that YouTube is tailored to infringement or induced it through specific acts, his contributory infringement claim must fail.

**D. Bryant's Vicarious Infringement Claim Separately Fails Because He Does Not Allege that Myers' Videos "Drew" Users to the Service.**

Bryant also fails to state a vicarious infringement claim against YouTube. To state such a claim, a plaintiff must plausibly allege, among other things, that YouTube has "a direct financial interest in" the infringing activity. *Parker v. Google, Inc.*, 242 F. App'x 833, 837 (3d Cir. 2007) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). But Bryant does not allege a single fact about any financial benefit that YouTube received directly from Myers' videos. That deficiency is fatal.

"Financial benefit exists where the availability of infringing material acts as a draw for customers." *Parker*, 242 F. App'x at 837 (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004)). "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps." *Ellison*, 357 F.3d at 1079. But Bryant "does not allege any facts that, if true, would support that

customers are drawn to [YouTube] due to the availability of infringing work." *Parker v. PayPal, Inc.*, 2017 WL 3508759, at *5 (E.D. Pa. Aug. 16, 2017). Bryant broadly asserts that YouTube "derived a direct financial benefit from the infringing activity, including advertising revenue, subscription and membership revenue . . . user engagement, and the draw of infringing content to its service." Compl. ¶ 98. But such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[] do not suffice." *Iqbal*, 556 U.S. at 678. His statement about the "draw" of infringing content in particular is a "conclusory allegation[]" that does not plausibly allege the requisite causal connection between Myers uploading the *For Lila* trailer and a financial benefit for YouTube. *PayPal*, 2017 WL 3508759, at *5. It certainly does not allow the Court to "conclude that [YouTube] ha[s] an obvious and direct financial interest in the exploitation of copyrighted materials, such that [it] can be found liable for vicarious copyright infringement." *Id.* (citation omitted).

Moreover, to plead vicarious infringement based on YouTube subscribers allegedly viewing Myers' uploads of *For Lila*, Bryant must allege that those subscribers are drawn to YouTube specifically by the alleged infringement of ***his copyrighted work***—not just copyright infringement generally. *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673-74 (9th Cir. 2017) ("[T]his action is a specific lawsuit by a specific plaintiff against a specific defendant about specific copyrighted [content]; it is not a lawsuit against copyright infringement in general on [defendant's website]. Thus, the direct financial benefit prong of the vicarious infringement test 'demands more than evidence that customers were drawn to [defendant's website] to obtain access to infringing material in general.'") (citation omitted). The Complaint alleges no such thing, so Bryant's vicarious infringement claim must fail.

**E. Bryant's Declaratory Judgment Cause of Action Also Fails.**

The Complaint alleges a separate cause of action seeking a "declaration that: (a) Plaintiff is the sole owner of all copyright interests in the For Lila screenplay and motion picture; (b) the Copyright Claims Board proceeding [] was dismissed without prejudice, adjudicated nothing, and conferred no rights on Malik Myers; (c) the counter-notifications submitted by Myers and honored by the Defendants contained material misrepresentations . . . ; and (d) by the conduct alleged herein, [YouTube] . . . is not entitled to safe harbor protection for the infringements alleged." Compl. ¶ 102. But "declaratory relief is a remedy, not an independent cause of action." *Vega*, 2026 WL 1855891, at *4 (quoting *Shulman v. McDonald's USA, LLC*, 2025 WL 1640267, at *1 n.1 (D.N.J. June 10, 2025)); *see also Kabbaj v. Google Inc.*, 592 F. App'x 74, 75 n.2 (3d Cir. 2015) (affirming dismissal of claim seeking declaratory relief because "declaratory[] relief [is a] remedy rather than [a] cause[] of action"). "An independent count for declaratory judgment adds nothing to this case," and the Court may dismiss it. *In re AZEK Bldg. Prods., Inc., Mktg. &Sales Pracs. Litig.*, 82 F. Supp. 3d 608, 625 (D.N.J. 2015).

Further, for the reasons above, Plaintiff is estopped from relitigating the question of Myers' co-ownership of *For Lila*. *Supra* 7-11. And it is improper to circumvent the final judgment in Myers' favor by seeking declaratory relief about Myers' rights in an action in which he is not a party. Nor can Bryant seek relief from YouTube for alleged misrepresentations in counter-notifications sent by a third party. Section 512(f) imposes liability only on the party who "knowingly" makes a "material[] misrepresent[ation]" in a DMCA notification or counter-notification—here, Myers, the alleged sender—not on the service provider that received and processed it. *See* 17 U.S.C. § 512(f); *see also Mishiyev v. YouTube LLC*, 2025 WL 1223556, at *3 (N.D. Cal. Apr. 28, 2025) ("[Section 512(f)] does not fathom making service providers like YouTube liable for fooling themselves."). And Bryant's requested declaration that YouTube is

"not entitled to safe harbor protection," Compl. ¶ 102, does not present a justiciable controversy: the § 512 safe harbor is an affirmative defense that YouTube has not invoked.

Because Bryant's "Declaratory Judgment" count is improper, redundant and independently deficient, it should be dismissed with prejudice.

### F. Bryant's Claims Should Be Dismissed Without Leave to Amend.

Although leave to amend is ordinarily freely granted, a court may—and should—dismiss with prejudice where amendment would be futile. *See, e.g.*, *Jenkins v. New Jersey*, 2011 WL 1466124, at *2 n.5 (D.N.J. Apr. 15, 2011) ("[O]rdinarily we would grant a pro se plaintiff leave to amend . . . Here, however, Plaintiff's claim is so clearly lacking in merit that no amendment can cure it.") (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002)). Amendment is futile when the complaint, as amended, would still fail to state a claim. *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010). That is the case here.

The direct infringement predicate to Bryant's contributory and vicarious infringement claims against YouTube cannot be repleaded. A final judgment has already determined that Myers co-owns the *For Lila* film and cannot infringe it, and Bryant is estopped from contesting that determination here. *Supra* 7-11. Bryant has now pressed the identical theory of infringement at least three times prior: before the CCB, before the district court in *Myers*, and in this Court. A fourth pleading would change nothing.

## CONCLUSION

For the foregoing reasons, YouTube respectfully requests that the Court dismiss Bryant's Complaint without leave to amend.

Dated: October 8, 2026

*/s/ Alison Genova*
Alison Genova (N.J. Bar No. 087492014)
Eric K. Nikolaides (*pro hac vice* pending)
**WILSON SONSINI GOODRICH & ROSATI, P.C**.
31 West 52nd Street, Fifth Floor
New York, NY 10019-6118
(212) 999-5800
agenova@wsgr.com
enikolaides@wsgr.com

*Counsel for Defendants Google LLC and YouTube LLC*